IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARK ANTHONY E., | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| COMMISSIONER OF SOCIAL | : | No. 23-cv-0729 |
| SECURITY, | : | |
| Defendant. | : | |

**MEMORANDUM OPINION**

**CRAIG M. STRAW**                                                    **October 30, 2024**
**United States Magistrate Judge**

 Mark Anthony E. ("Plaintiff") seeks review of the Commissioner's decision denying his

application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI")

benefits.  The parties consented to proceed before a Magistrate Judge[1] and the matter was

assigned to me.  For the following reasons, I deny Plaintiff's request for review and affirm the

Commissioner's decision.

**I.     PROCEDURAL HISTORY**

 On March 24, 2016, Plaintiff filed an application for DIB and SSI benefits under the

Social Security Act ("SSA").  R. 375-81, 384-91.  In his application, Plaintiff asserted his

disabling condition began on September 30, 2014.  Id.

 The claims were denied initially on July 14, 2016.  R. 115-29, 131-45.  Plaintiff requested

a hearing.  R. 187.  A hearing took place on April 20, 2018, before an Administrative Law Judge

---

[1] See Doc. 5; 28 U.S.C. § 636(c) & Fed. R. Civ. P. 73.

("ALJ"). R. 54. Plaintiff appeared in-person with his counsel. R. 56. The ALJ denied benefits on November 2, 2018. R. 146-64.

Plaintiff filed a request for review, asserting the ALJ decision was not based on substantial evidence because the ALJ did not accord proper weight to Plaintiff's mental health treatment providers. R. 234, 686. The Appeals Council granted the request for review, vacated the ALJ decision, and remanded the case to resolve several issues. R. 171-76.

First, the Appeals Council directed the ALJ to proffer all evidence in accordance with HALLEX 1-2-7-30 because some documents in the record were missing pages. R. 174. Additionally, the ALJ was directed to obtain more evidence regarding Plaintiff's impairments to complete the administrative record. Id. Furthermore, the ALJ was to further consider Plaintiff's maximum residual functional capacity ("RFC") for the period at issue and, "provide rationale with specific references to evidence of record in support of assessed limitations." Id. The ALJ was also directed to evaluate the treating source opinion pursuant to the provisions of "20 C.F.R. 404.1527 and 416.927 and nonexamining source opinions in accordance with the provisions of 20 C.F.R. 404.1527 and 416.927, and explain the weight given to such opinion evidence." Id. Finally, if necessary, the ALJ was directed to obtain supplemental evidence from the Vocational Expert ("VE") to clarify the effect of the assessed limitations on Plaintiff's occupational base as well as identify jobs in the national economy that Plaintiff could perform. Id.

A second hearing was held on September 21, 2021, before a different ALJ, Sandra Morales Price. R. 79. Because of the COVID-19 Pandemic, all parties, including VE Donna Nealon and Plaintiff's counsel, participated by telephone. Id. at 82. The ALJ denied benefits on

October 14, 2021. R. 46. Plaintiff filed a request for review of the ALJ's decision and a hearing, which were denied. R. 1-7. Thus, the ALJ's decision became the final decision of the Commissioner of Social Security. R. 1-7; 20 C.F.R. §§ 404.981, 416.1481. Plaintiff's counsel then filed this action in federal court. Doc. 1. Plaintiff, through counsel, filed Plaintiff's Brief and Statement of Issues in Support of Request for Review. Doc. 12. Defendant filed a Response to Plaintiff's Request for Review. Doc. 13. Plaintiff filed a Reply. Doc. 14.

## II.   <u>LEGAL STANDARDS</u>

To prove disability, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). The Commissioner employs a five-step sequential process to determine if a claimant is disabled, evaluating:

1.   Whether the claimant is currently engaged in substantial gainful activity;

2.   If not, whether the claimant has a "severe impairment" that significantly limits their physical or mental ability to perform basic work activities;

3.   If so, whether based on the medical evidence, the impairment meets or equals the criteria of an impairment listed in the listing of impairments ("Listings," <u>see</u> 20 C.F.R. pt. 404, subpt. P, app. 1), which results in a presumption of disability;

4.   If the impairment does not meet or equal the criteria for a listed impairment, whether, despite the severe impairment, the claimant has the RFC to perform their past work; and

5.   If the claimant cannot perform their past work, whether there is other work in the national economy that the claimant can perform.

3

See Zirnsak v. Colvin, 777 F.3d 607, 611 (3d Cir. 2014); see also 20 C.F.R. §§ 404.1520(a)(4),

416.920(a)(4).  Plaintiff bears the burden of proof at steps one through four, while the burden

shifts to the Commissioner at step five to establish that the claimant can perform other jobs in the

local and national economies based on their age, education, work experience, and RFC.  See

Poulos v. Comm'r of Soc. Sec., 474 F.3d 88, 92 (3d Cir. 2007).

The court's role on judicial review is to determine whether the Commissioner's decision

is supported by substantial evidence.  See 42 U.S.C. § 405(g); Schaudeck v. Comm'r of Soc.

Sec., 181 F.3d 429, 431 (3d Cir. 1999).  "Substantial evidence is 'such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion,'" and must be "more than a

mere scintilla but may be somewhat less than a preponderance of the evidence."  Zirnsak, 777

F.3d at 610 (quoting Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005)); see also Biestek

v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (explaining substantial evidence "means only—'such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion'")

(quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938) (additional citations omitted)).

It is a deferential standard of review.  Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004) (citing

Schaudeck, 181 F.3d at 431).

III.     **ALJ'S DECISION AND PLAINTIFF'S REQUEST FOR REVIEW**

The ALJ determined that Plaintiff met the insured status requirements of the SSA through

December 31, 2018.  R. 34.  The ALJ further found that Plaintiff has not engaged in any

substantial gainful employment since his disability onset date ("DOD").  R. 35.

4

The ALJ found that Plaintiff had several severe impairments including degenerative disc disease, affective disorder, anxiety disorder, and substance addiction disorders.[2]  Id.; 20 C.F.R. §§ 404.1527, 416.927.[3]  The ALJ decided that Plaintiff's impairments or combination of impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1.  R. 35.  The ALJ also found that Plaintiff's mental impairments did not satisfy the "paragraph B" criteria[4] because he did not have at least two "marked" limitations or one "extreme" limitation.  R. 36.

First, the ALJ found a mild limitation in understanding, remembering, and applying information.  R. 35.  Plaintiff had moderate limitations in interacting with others, concentrating, persisting, maintaining pace, and adapting or managing oneself.  R. 36.  Hence, the "paragraph B" criteria were not met.  Id.

---

[2] Plaintiff's request for review only challenges the ALJ's findings regarding Plaintiff's mental impairments.  Doc. 12, at 5.  Thus, Plaintiff's physical limitations and the ALJ's findings regarding Plaintiff's physical limitations are not discussed in this opinion.

[3] It appears the ALJ mistakenly cited 20 C.F.R. §§ 404.1520(c), 416.920(c), the post-2017 regulations, in her opinion's conclusion.  R. 35.  The ALJ, however, correctly applied the pre-2017 standard of evaluation in her analysis.  Plaintiff's application for benefits was filed on March 24, 2016.  See R. 375-381, 384-391.  Effective March 27, 2017, the SSA amended the rules addressing the evaluation of medical evidence, eliminating the assignment of weight to any medical opinion.  See Revisions to Rules Regarding the Evaluation of Medical Evidence, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017).

[4] The four "paragraph B" criteria rate a claimant's functional limitations.  See 20 C.F.R. pt. 404, subpt. P, app. 1.  To satisfy the "paragraph B" criteria, the mental impairment must result in one extreme limitation or two marked limitations in the four areas of mental functioning.  Id. § 12.00(A)(2).  An extreme limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis.  Id. § 12.00(F)(2)(e).  A marked limitation is a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis.  Id. § 12.00(F)(2)(d).

The ALJ also found that the evidence failed to establish the presence of the "paragraph

C" criteria.[5]  Id.  The ALJ determined that the severity of Plaintiff's mental impairments, either

singly or in combination, did not meet or medically equal any of the Listings.[6]  R. 35; 20 C.F.R.

pt. 404 subpt. P, app. 1; see also 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d),

416.925, 416.926.

Considering the entire record, the ALJ found Plaintiff had the RFC to perform light work

as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except Plaintiff could not frequently

reach overhead.  R. 37.  The ALJ also limited Plaintiff to no climbing of ladders, ropes, or

scaffolds, but occasional stooping, kneeling, crouching, crawling, and climbing ramps/stairs.  Id.

Plaintiff was also limited to no exposure to unprotected heights and occasional exposure to

moving mechanical parts, humidity, wetness, vibrations, and extreme cold/heat.  Id.  Plaintiff

could perform simple routine tasks and decision making and could tolerate only occasional

changes in the workplace.  Id.  Plaintiff was limited to no contact with the public and occasional

contact with supervisors and co-workers.  Id.

After providing a detailed history of Plaintiff's mental health treatment, the ALJ stated:

> Overall, the record reflects a history of mental health problems,
> which have been complicated by extensive substance abuse. While
> the claimant has received outpatient counseling through Aldie and
> methadone maintenance, since obtaining sobriety in November

---

[5] See 20 C.F.R. pt. 404 subpt. P, app. 1 § 12.00(G)(2)(b)-(c).  The ALJ noted that the evidence in
the record does not establish that Plaintiff has only marginal adjustment, defined as a minimal
capacity to adapt to changes in the Plaintiff's environment or to demands that are not already a
part of Plaintiff's daily life.  R. 36.
[6] The ALJ specifically considered Listings 20 C.F.R. pt. 404 subpt. P, app. 1 §§ 12.04
(depressive, bipolar, and related disorders) and 12.06 (anxiety and obsessive-compulsive
disorders).  R. 35.

2015, he has not received consistent psychiatric care, including medication management services. Further, since that time, the claimant has not sought or been referred for an additional level of care, such as a crisis evaluation, inpatient psychiatric care, or involvement in a partial hospital or intensive outpatient program. Moreover, the limited mental status findings throughout the record have been relatively unremarkable and recent primary care treatment note detail improvement in his symptoms with the use of medication. However, based on the claimant's documented depression and anxiety, as well as his history of substance abuse, I have included appropriately mental health restrictions in the established residual functional capacity.

. . . I note that the claimant's described activities of daily living are not as limited as one would expect given the complaints of disabling symptoms and limitations. At one point or another in the record, the claimant has displayed an ability to perform his own personal care tasks, help care for his children and pets, prepare simple meals, do light household chores, drive, use public transportation, shop in stores, manage money and pay bills, play guitar and piano, attend church, go to the park with his children, attend family gatherings, read, watch television, use social media, and socialize with friends. These activities reveal a greater physical and mental functional ability than alleged in connection with this claim for disability.

R. 4-42. (citations omitted)

Regarding opinion evidence, the ALJ found:[7]

Following an April 2018 psychological CE, Lan Yang, Psy.D., completed a mental residual functional capacity assessment of the claimant reflecting a range of "mild" and "moderate" limitation in areas of mental functioning. This opinion is afforded partial weight, as the record does not reflect a need for "marked" limits in any area of mental work-related functioning. However, based on the claimant's subjective statements, I am finding greater interaction limitations as noted in the established residual functional capacity.

---

[7] The ALJ also evaluated State Agency Psychologist Consultant Henry Weeks, Ph.D.'s medical opinion but his opinion is not at issue in Plaintiff's request for review.

In March 2018, Adam Tanzer, Ph.D., remarked that he provided outpatient mental health counseling to claimant on three occasions and noted that the claimant "reported significant occupational impairment." At that time, he also completed a mental residual functional capacity assessment, in which he noted that per the patient's "self-report," he had "marked" restrictions in activities of daily living; "marked" difficulty in maintaining social functioning; and "marked" deficiencies in concentration, persistence, or pace with no repeated episodes of decompensation. . . . Similarly, in June 2016, Dr. Tanzer wrote a statement, in which he noted that based on the claimant's self-report, behavioral observation, and a clinical interview, the claimant's mental illness symptoms have led to significant occupational impairment. . . . These opinions are assigned no weight, as the doctor used the old "B" criteria and none of the proposed "marked" limitations are supported by or consistent with the evidence. Further, the doctor's statements regarding disability are issues reserved to the Commissioner. Moreover, it appears that the doctor is simply repeating the claimant's self-report, rather than offering his own medical opinion or addressing specific functional limitations.

Following an early June 2016 psychological CE, Susan Shipley completed a mental residual functional capacity assessment of the claimant . . . . This opinion is afforded partial weight, as additional limits related to interacting with the public should be added in consideration of the claimant's subjective allegations, including social withdrawal, panic attacks, and fearfulness and flashbacks related to the claimant's time in prison, as well as his presentation at the CE.

R. 41-44.  (alteration in original quote) (citations omitted).

While Plaintiff had relevant past work, he was unable to perform any of it.  R. 44, 20 C.F.R. §§ 404.1565(a), 416.965.  Relying on the testimony of the VE, the ALJ determined based on Plaintiff's age, education, work experience, and RFC, a significant number of jobs existed in the national economy he could perform including unskilled light work positions such as housekeeper cleaner (DOT # 323.687-014), sorter (DOT # 573.687-034), and inspector packer

(DOT # 784.687-042).  R. 45, 97-98.  Therefore, the ALJ found that Plaintiff was not disabled. R. 46.

In his request for review, Plaintiff argues the ALJ failed to weigh the medical evidence in accordance with 20 C.F.R. §§ 404.1527 and 416.927 and crafted an RFC void of any articulated reasoning or specified evidentiary support.  Doc. 12, at 4.  Plaintiff claims the ALJ failed to properly weigh Dr. Adam Tanzer's treating source opinion and did not provide an adequate rationale when rejecting his opinion.  Doc. 12, at 5-6.  Plaintiff also claims the ALJ failed to give appropriate weight to Dr. Lan Yang and Dr. Susan Shipley's medical opinions.  Doc. 12, at 8-11. The Commissioner asserts the ALJ properly evaluated the opinion evidence and substantial evidence supports the ALJ's finding that Plaintiff is not disabled.  Doc. 13, at 7-12.

## IV.   FACTUAL BACKGROUND

### A.  Non-medical evidence

Plaintiff was born in 1979 and was therefore a "younger person" during his claimed period of disability.  R. 44, 81, 375, 384; 20 C.F.R. §§ 404.1563(c), 416.963(c).  Plaintiff graduated from high school and completed some college.  R. 96.  He has prior work experience as a telephone sales representative, construction worker, and estimator.  Id.

Plaintiff stopped working in September 2014.  R. 85, 88.  He was working an office job providing quotes for a fire protection and plumbing company.  R. 85.  Plaintiff reported problems with concentration, punctuality, and attendance due to his anxiety making it hard for him to leave the house.  R. 86-87.  He also reported trouble sleeping.  R. 89.  He claimed that he would mentally make "mountain[s] out of molehills" which would cause him to panic requiring him to

take frequent breaks to calm down.  R. 87, 90.  Plaintiff reported having problems with his co-workers.  R. 91.  He claimed, "if I was sitting in my desk I would think that there was a problem . . . with my coworker and then it would cause me to, you know, really create this friction between me and these other coworkers. . . ."  R. 91.  Plaintiff was terminated from his job in September 2014.  R. 88.  He became very depressed and relapsed.  Id.  Plaintiff, however, reported being sober for six years at the time of his hearing.  Id.

Plaintiff was seeing a counselor once a week and was treating with Dr. Tanzer.  R. 90. Plaintiff, however, was not seeing Dr. Tanzer at the time of the hearing and had tried restarting services but was unable to due to COVID-19.  Id.  Plaintiff lives with his wife and two daughters—ages 11 and 14.  R. 95.  He claims his daughters help significantly with chores.  Id.

**B.  Medical evidence**[8]

Plaintiff began mental health treatment in January 2014 with psychiatrist Cesar Fabiani, M.D., at Internet Behavioral Health Care.  R. 1035.  Plaintiff treated with Dr. Fabiani every eight weeks until November 2014.  R. 1030.  Plaintiff generally reported doing well, being happy, being successful, and was compliant with medication.  R. 1030-35.  After Plaintiff's DOD, Plaintiff reported concern about his mother's health but otherwise his status was unaffected.  R. 1030.

On November 4, 2014, Plaintiff began a short period of incarceration at Bucks County Correctional Facility.  R. 740.  Plaintiff appeared anxious and reported an active addiction on admission.  R. 740, 742.  The nurse performing the intake noted that Plaintiff's appearance,

---

[8] Here, I outline only the pertinent medical evidence related to the issues on appeal.

perception, thought processes, mood, and affect were appropriate.  R. 746.  Plaintiff reported a history of depression and ADHD.  R. 761.  After his release in February 2015, Plaintiff resumed treatment with Dr. Fabiani.  R. 1029.  Plaintiff was doing "really good," was medically compliant, and did not report any issues aside from marital discord.  R. 1026-29.  In August 2015, Plaintiff was again incarcerated at Bucks County Correctional Facility.  R. 759.  During this incarceration, Plaintiff reported active drug use but did not report mental health related issues nor did the staff note any issues.  R. 763-821.

After Plaintiff's release, he entered Kirkbride for inpatient substance abuse treatment.  R. 1002.  During his time at Kirkbride, Plaintiff made significant progress with his substance abuse, learning coping skills, addressing behavioral patterns, and stabilizing while taking medication.  R. 1024.  Plaintiff was discharged in November 2015 and placed in outpatient treatment with Aldie Counseling Center.  R. 1024, 1057.

**Adam Tanzer, Ph.D.**

From November 2015 to February 2018, Plaintiff treated with Dr. Fabiani, and Dr. Adam Tanzer from Aldie Counseling Center.  R. 1057, 1172.  A letter from Aldie noted that Plaintiff began a methadone maintenance program and outpatient individual and group therapy on November 13, 2015.  R. 1057.  Dr. Tanzer provided Plaintiff outpatient mental health counseling on three occasions—November 3, 2017, November 10, 2017, and February 27, 2018.  R. 1172.  Dr. Tanzer's intake on November 3, 2017, diagnosed Plaintiff with major depressive disorder with moderate severity and resulting significant impairment in social and occupational functioning, and opioid dependence in sustained full remission.  R. 1182, 1274.

11

Dr. Tanzer completed a mental impairment questionnaire on March 20, 2018.  R. 1173.
At the time, Plaintiff was actively taking Paxil, Vistaral, Remeran, Lisinopril, Nerontin, and
Methadone.  Id.  Plaintiff reported drowsiness, sweats, and disorientation.  Id.  Dr. Tanzer noted
that Plaintiff reported significant symptoms of depression that have led to significant
occupational impairment.  R. 1173-72.  Plaintiff self-reported "marked" functional limitations in
activities of daily living, maintaining social functioning, and concentration, persistence, and
pace.  R. 1175.  Plaintiff also reported no reappearing episodes of decompensation within a 12-
month period.  Id.  A letter from Dr. Tanzer dated June 25, 2018, noted that Dr. Tanzer
diagnosed Plaintiff with major depressive disorder, recurrent, moderate severity.  R. 1274.
Based on Plaintiff's self-reports and clinical interview, Dr. Tanzer believed that Plaintiff's
mental illness symptoms have led to significant occupational impairment and his symptoms have
a high likelihood of impacting related skills and responsibilities.  Id.  Dr. Tanzer also opined that
Plaintiff's symptoms will impact his ability to: remember different instructions and procedures,
maintain his attention and focus for significant amounts of time, regularly attend work and
punctuality, follow an ordinary routine at work, work well with coworkers, work a normal
workday and workweek without significant disruption, and tolerate typical work-related stress.
R. 1274.

**Lan Yang, Psy.D.**

On April 19, 2018, Dr. Lan Yang, conducted a mental status evaluation on Plaintiff.  R.
1185.  Plaintiff reported trouble sleeping, loss of appetite, dysphoria, feelings of guilt,
hopelessness, psychomotor agitation, worthlessness, concentration difficulties, and suicidal

ideation.  R. 1186.  Plaintiff also reported panic attacks, anxiety, and avoidance of social

situations.  R. 1186-87.  Dr. Yang noted that Plaintiff was well dressed, presented appropriately,

his speech was clear and quick, his thought process was coherent, he demonstrated a full range of

affect, he appeared very anxious, his sensorium was clear, and he was oriented.  R. 1188.

Plaintiff's attention and concentration appeared mildly impaired due to his anxiety.  Id.  He,

however, was able to perform the simple counting tasks and completed three out of five

calculations and serial sevens task.  Id.  His short term and long-term memory were mildly

impaired due to anxiety.  Id.  He demonstrated good insight and judgment.  R. 1189.  Plaintiff

reported being able to perform all his activities of daily living, socialize with his friend, and was

able to take public transportation.  Id.  He was not able to do laundry, clean, or cook due to his

back, and his wife managed most of the finances.  Id.  Plaintiff's hobbies included playing guitar,

piano, listening to the radio, reading, and watching TV.  Id.

     Dr. Yang completed a Medical Source Statement of Ability to do Work-Related

Activities ("MSS") (Mental) with her findings.  R. 1191-93.  Dr. Yang found that Plaintiff was

mildly impaired in understanding and remembering instructions, carrying out simple instructions,

and carrying out complex instructions.  Id.  Dr. Yang also noted a mild impairment in Plaintiff's

ability to interact appropriately with the public, supervisors, and co-workers.  R. 1192.  Plaintiff

was moderately impaired in understanding and remembering complex instructions, and in his

ability to make judgments on complex work-related decisions.  R. 1191-93.  Plaintiff was also

moderately impaired in his ability to respond appropriately to usual work situations and changes

in a routine work setting.  Id.  Dr. Yang explained that Plaintiff suffered from anxiety, some

memory issues, and mood lability.  Id.  Dr. Yang cited to Plaintiff's anxiety, panic attacks,

depression, and inadequate coping skills to support her findings.  Id.  Lastly, she noted that

Plaintiff cannot manage his own benefits due to his history of substance abuse.  R. 1193.

**Dr. Susan Shipley**

Dr. Susan Shipley conducted a mental status evaluation of Plaintiff on June 13, 2016.  R.

1119-22.  Plaintiff reported depression and anxiety with panic attacks.  R. 1119-20.  Plaintiff

reported difficulty sleeping, depressive moods, crying spells, feelings of guilt and hopelessness,

loss of interest, and social withdrawal.  R. 1120.  Upon examination, Plaintiff presented

slouched, tense, lethargic, and made poor eye contact.  R. 1121.  His speech was mumbled and

atonal, but his language use was adequate.  Id.  Plaintiff's thought process was coherent, his

insight was fair, and his judgment was fair.  Id.  His attention, concentration, and memory were

intact.  Id.  Dr. Shipley noted that the results of her examination are consistent with substance

abuse.  R. 1122.

Dr. Shipley also provided an MSS for Plaintiff after her examination.  R. 1123-25.  Dr.

Shipley found that Plaintiff was mildly impaired in his ability to make judgments on simple

work-related decisions and understand and remember complex instructions.  R. 1123.  Plaintiff

was moderately impaired in his ability to carry out complex instructions and make judgments on

complex work-related decisions.  Id.  Dr. Shipley also found that Plaintiff did not have any

limitations in his ability to understand, remember, and carry out simple instructions.  Id.  Next,

Dr. Shipley found that Plaintiff had mild limitations in his ability to interact appropriately with

the public and co-workers.  Id.  Plaintiff was moderately impaired in his ability to interact

appropriately with supervisors and respond appropriately to usual work situations and to changes in a routine work setting.  Id.  Dr. Shipley cited to her observations of Plaintiff as support for her findings.  R. 1123-24.

## V.    DISCUSSION

### A.  The ALJ appropriately evaluated and weighed the medical opinions in accordance with 20 C.F.R. §§ 404.1527 and 416.927.

Plaintiff argues that the ALJ failed to comply with the Appeals Court remand order directing the ALJ to evaluate the treating and nonexamining sources under 20 C.F.R. §§ 404.1527 and 416.927, and explain the weight given to each.[9]  Docs. 12, at 5, 14, at 4.  Plaintiff also claims that the ALJ improperly weighed the medical opinions of Dr. Tanzer (treating physician), Dr. Yang, and Dr. Shipley.  Doc. 12, at 5-10.

When a benefits application is filed before March 27, 2017, a treating source's medical opinion should be given substantial, and at times, even controlling weight.  See 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  An ALJ affords treating physicians' reports great weight because "their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'"  Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Rocco v. Heckler, 826 F.2d 1348, 1350 (3d Cir. 1987)).  Medical sources that have a limited relationship with a claimant are not afforded that greater weight.  See e.g., Smith v. Comm'r Soc. Sec., 482 F.3d 873, 876 (6th Cir. 2007) (stating medical reports from doctor who

---

[9] For the reasons set forth in this opinion, Plaintiff's claim that the ALJ did not evaluate and assign weight per the proper regulations fails.  Additionally, a violation of the Appeals Council's remand order alone is not grounds for remand.  Lessig v. O'Malley, No. 22-3170, 2024 WL 1604607, at *1, *10-11 (April 12, 2024).

examined claimant once and wrote physical capacity evaluation, and another who examined claimant, completed medical report, prescribed medication, and refused to fill refill did not deserve treating-source review because neither doctor had type of ongoing treatment relationship with claimant as contemplated by regulation).

An ALJ must consider the medical findings supporting a treating physician's opinion that claimant is disabled.  See Morales, 225 F.3d at 317-18 (citing Adorno v. Shalala, 40 F.3d 43, 48 (3d Cir. 1994)).  An ALJ may reject a treating physician's assessment or opinion if the ALJ does not make "speculative inferences from medical reports" or can reject them "outright only on the basis of contradictory medical evidence," but cannot reject them due to his or her own credibility judgments, speculation, or lay opinion.  Morales, 225 F.3d at 317-18 (quoting Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1991)) (additional citations omitted).  When an ALJ does not give the treating source controlling weight, the ALJ must consider the same factors considered for non-treating medical source opinions (1) length of treatment, (2) nature and extent of the treatment relationship, (3) supportability of the evidence, and (4) other factors.  20 C.F.R. §§ 404.1527(c), 416.927(c).  When the record contains conflicting evidence, the ALJ may choose which evidence to credit and which evidence not to credit, so long as he or she does not "reject evidence for no reason or for the wrong reason."  Rutherford, 399 F.3d at 554; Plummer, 186 F.3d at 429.

### i. The ALJ appropriately evaluated and weighed Plaintiff's treating source's medical opinions in accordance with 20 C.F.R. §§ 404.1527 and 416.927.

Plaintiff first claims that the ALJ improperly rejected the opinions of Plaintiff's treating mental health provider, Dr. Tanzer, and failed to comply with 20 C.F.R. §§ 404.1527, 416.927

when explaining why she rejected Dr. Tanzer's opinion.[10]  Doc. 12, at 5-7.  When evaluating Dr.

Tanzer's opinion, the ALJ stated:

> Between November 2017 and February 2018, the claimant treated with Adam Tanzer, Ph.D. Dr. Tanzer's treatment notes are vague and consist of comments and check marks on a preprinted form that provide little information regarding symptoms or complaints. The mental status examination findings do not indicate any acute symptoms and reflect a depressed mood, but neat appearance, appropriate affect, intact memory, normal motor behavior, and variable distractibility. In addition, his treatment notes appear to focus primarily on substance abuse treatment.

R. 41 (internal citations omitted).

> In March 2018, Adam Tanzer, Ph.D., remarked that he provided outpatient mental health counseling to claimant on three occasions and noted that the claimant "reported significant occupational impairment." At that time, he also completed a mental residual functional capacity assessment, in which he noted that per the patient's "self-report," he had "marked" restrictions in activities of daily living; "marked" difficulty in maintaining social functioning; and "marked" deficiencies in concentration, persistence, or pace with no repeated episodes of decompensation . . . . Similarly, in June 2016, Dr. Tanzer wrote a statement, in which he noted that based on the claimant's self-report, behavioral observation, and a clinical interview, the claimant's mental illness symptoms have led to significant occupational impairment. . . . These opinions are assigned no weight, as the doctor used the old "B" criteria and none of the proposed "marked" limitations are supported by or consistent with the evidence. Further, the doctor's statements regarding disability are issues reserved to the Commissioner. Moreover, it appears that the doctor is simply repeating the claimant's self-report, rather than offering his own medical opinion or addressing specific functional limitations.

---

[10] Based on the record provided, it appears that Plaintiff treated with Dr. Tanzer for at least seven months.  R. 1172.  Neither party argues that Dr. Tanzer was not Plaintiff's treating mental health provider.  Thus, whether Plaintiff treated with Dr. Tanzer frequently enough and for enough time to qualify as Plaintiff's treating mental health provider is not addressed in this opinion.

R. 43 (internal citations omitted).

Plaintiff saw Dr. Tanzer three times—November 3, 2017, November 10, 2017, and February 27, 2018— before Dr. Tanzer completed Plaintiff's March 20, 2018, mental impairment questionnaire. R. 1172. Dr. Tanzer further provided a letter opinion on June 25, 2018, regarding Plaintiff's impairments and their effect on Plaintiff's ability to work. R. 1274. The ALJ rejected Dr. Tanzer's opinions assigning them no weight. R. 43.

The ALJ explained in sufficient detail why she afforded Dr. Tanzer's opinions no weight and chose not to adopt Dr. Tanzer's limitations when crafting Plaintiff's RFC. See Rutherford, 399 F.3d at 554. The ALJ addressed length of treatment by noting that Plaintiff only saw Dr. Tanzer three times. R. 41. The ALJ then detailed the nature of the relationship by acknowledging Dr. Tanzer's role as Plaintiff's mental health treatment provider. R. 41-43. When discussing Dr. Tanzer's treatment notes, the ALJ specifically recognized that Plaintiff saw Dr. Tanzer for depression, but the majority of his treatment pertained to substance abuse. Id. The ALJ then addressed supportability in the most detail. Id.

The ALJ concluded that Dr. Tanzer's opinions are not supported or consistent with record evidence, and that it appeared Dr. Tanzer was repeating Plaintiff's self-report rather than offering his own medical opinion or addressing specific functional limitations.[11] R. 43. The ALJ supported this conclusion by citing to the vague treatment records, lack of information about

---

[11] Importantly, in accordance with the Appeals Counsel order, Dr. Tanzer's June 2018 letter opinion was included in the ALJ's determination that Dr. Tanzer's opinions are not supported by the record evidence. R. 43.

Plaintiff's symptoms and complaints, and Dr. Tanzer's citation to Plaintiff's self-reports when offering conclusions about Plaintiff's impairments.  R. 41, 1173-76.

Specifically, the ALJ noted that Dr. Tanzer's treatment records are vague, consisting of check marks without information on symptoms or complaints, and Dr. Tanzer's records provide that, despite exhibiting a depressive mood, Plaintiff presented appropriately with intact abilities. R. 41.  Significantly, the ALJ identified that throughout the mental impairment evaluation Dr. Tanzer noted several times that the information provided on the form is based on Plaintiff's self-reports.  R. 43, 1173-76.  Where the form asked Dr. Tanzer to identity Plaintiff's signs and symptoms Dr. Tanzer wrote "Pt self-report" above the list of twenty-seven checked off items.  R. 1174.  Importantly, where Dr. Tanzer was to indicate Plaintiff's functional limitations, Dr. Tanzer again wrote "Pt self-report" above the box which noted three "marked" limitations.  R. 1175.

Regarding Dr. Tanzer's June 2016 opinion in particular, the ALJ found Dr. Tanzer's opinion was not supported by the record evidence.  R. 43.  Dr. Tanzer opined based on Plaintiff's self-report, behavioral observation, and a clinical interview, that Plaintiff's mental illness symptoms have led to significant occupational impairment.[12]  R. 43, 1274.  He noted that the Plaintiff's symptoms have a "high likelihood" of impacting work-related skills and responsibilities.  R. 43, 1274.  The ALJ, earlier in her opinion, noted that the record evidence reflected that Plaintiff was primarily treated for substance abuse.  R. 41-42.  Since his sobriety in 2015, Plaintiff had not received consistent psychiatric treatment or medication management, he

---

[12] Dr. Tanzer offered this opinion without supporting documentation.

had not sought or been referred for additional levels of care, he had no hospitalizations or

intensive treatment, and his symptoms were managed with medication.  Id.  Plaintiff's activities

of daily living reflect that he was able to perform most daily living activities, maintain hobbies,

and socialize.  Id.  Apart from Dr. Tanzer's own records reflecting that Plaintiff presented with

appropriate affect, intact memory, normal motor behavior, variable distractibility, and presented

appropriately, the ALJ relied on other record evidence to show that Dr. Tanzer's opinion

requiring greater functional limitations was not supported by the evidence.  R. 41-43, 1177-79.

Additionally, the ALJ noted that other medical providers concluded no more than moderate

limitations of mental function.[13]  R. 43-44, 746, 763-821, 1026-30, 1057, 1119-24, 1172-75,

1182, 1185-93, 1254-71, 1274.

      The ALJ applied 20 C.F.R. §§ 404.1527 and 416.927 and assigned Dr. Tanzer's opinion

no weight.  R. 43.  The ALJ provided sufficient reasoning when rejecting Plaintiff's treating

mental health provider's opinion, specifically finding that the record evidence contradicted Dr.

Tanzer's opinion.  See Morales, 225 F.3d at 317-18.  The ALJ was permitted to adopt medical

---

[13] Plaintiff claims that Dr. Bell's opinion supports Dr. Tanzer's conclusions that Plaintiff is
significantly impaired.  Doc. 12, at 9.  Plaintiff specifically argues that Dr. Bell found moderate
limitations which, by definition, means Plaintiff is seriously limited.  Id.  Dr. Bell completed a
MSS on May 20, 2018.  R. 1254-71.  Among his findings that Plaintiff had some mild
limitations, Dr. Bell found Plaintiff was moderately limited in in his ability to interact
appropriately with the general public, accept instructions, respond appropriately to criticism from
supervisors, get along with coworkers or peers without distracting them or exhibiting behavioral
extremes, and travel in unfamiliar places or use public transportation and deal with normal work
stress.  R. 1261.  Even if I were to accept Plaintiff's argument that moderate limitations equal the
significant impairment Dr. Tanzer reported, Dr. Bell concluded that Plaintiff could work eight
hours a day, five days a week, on a regular and continuous basis, thus Plaintiff would not be
disabled.  R. 1258.  Additionally, the ALJ incorporated Dr. Bell's proposed limitations into
Plaintiff's RFC.  R. 37, 1262-67.

evidence contradicting Dr. Tanzer's findings.  See Morales, 225 F.3d at 317-18.  The record does not indicate the ALJ rejected Dr. Tanzer's opinion based on any speculative inferences from the medical reports or her own credibility judgment or lay opinion.  See Id.  This Court will not re-weigh the evidence when substantial evidence supports the ALJ's conclusion.  See Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190-91 (3d Cir. 1986).   For these reasons, Plaintiff's claim that the ALJ did not properly consider or address Dr. Tanzer's opinion fails.

**ii. The ALJ properly considered and weighed the opinions of Drs. Yang and Shipley.**

Next, Plaintiff claims that the ALJ did not evaluate Dr. Yang and Dr. Shipley's opinions in accordance with 20 C.F.R. §§ 404.1527 and 416.927 and failed to give adequate reasoning for the weight assigned to each opinion.  Doc. 12, at 9-11.  This claim also fails.

Regarding Dr. Yang's opinion, the ALJ stated:

> Following an April 2018 psychological CE, Lan Yang, Psy.D., completed a mental residual functional capacity assessment of the claimant reflecting a range of "mild" and "moderate" limitation in areas of mental functioning. This opinion is afforded partial weight, as the record does not reflect a need for "marked" limits in any area of mental work-related functioning. However, based on the claimant's subjective statements, I am finding greater interaction limitations as noted in the established residual functional capacity.

R. 43 (internal citations omitted).

Here, the ALJ assigned partial weight to Dr. Yang's opinion because Dr. Yang found only a mild limitation in Plaintiff's ability to interact socially, yet the ALJ found a need for greater limitations on Plaintiff's social interactions based on Plaintiff's subjective complaints.  R. 43.  Dr. Yang found moderate impairment regarding Plaintiff's ability to understand and remember complex instructions and in his abilities to make judgments on complex work-related

21

decisions.  R. 1191.  Dr. Yang determined that all of Plaintiff's other mental functions were

mildly impaired.  Id.  The ALJ accounted for the mild and moderate limitations Dr. Yang found

by limiting Plaintiff's RFC to simple, routine task, and simple work-related decisions.  R. 37.

Importantly, the ALJ found greater restrictions on Plaintiff's ability to interact with others based

on Plaintiff' subjective complaints, which again the ALJ incorporated in Plaintiff's RFC.  R. 37,

43, 1192.  Thus, the ALJ did adopt the limitations proposed by Dr. Yang and, in fact, imposed

greater limitations on Plaintiff's ability to interact with others, which benefited Plaintiff and was

well-within her discretion to do.  R. 37, 43, 1192.  See Titterington, 174 F. App'x at 11 (allowing

an ALJ to adopt greater limitations than those found by physician).  Accordingly, Plaintiff's

claim that the ALJ did not evaluate, and afford appropriate weight and reasoning to Dr. Yang's

opinion pursuant to the regulations fails.[14]

Next, Plaintiff claims that the ALJ did not evaluate Dr. Shipley's opinion according to 20

C.F.R. §§ 404.1527 and 416.927 and failed to give adequate reasoning for the weight assigned to

Dr. Shipley's opinion.  Doc. 12, at 9-11.  When addressing Dr. Shipley's opinion, the ALJ stated:

> Following an early June 2016 psychological CE, Susan Shipley
> completed a mental residual functional capacity assessment of the
> claimant . . . .  This opinion is afforded partial weight, as additional
> limits related to interacting with the public should be added in
> consideration of the claimant's subjective allegations, including
> social withdrawal, panic attacks, and fearfulness and flashbacks
> related to the claimant's time in prison, as well as his presentation
> at the CE.

---

[14] Additionally, remand is not warranted since the ALJ adopted Dr. Yang's limitations, and
additional explanation by the ALJ would not affect the outcome of the case.  See Rutherford, 399
F.3d at 553 (holding remand not required if it would not affect the outcome of the case).

R. 44 (internal citations omitted).

Like the ALJ's treatment of Dr. Yang's opinion, the ALJ adopted the limitations proposed by Dr. Shipley and imposed additional limitations.  R. 44.  Dr. Shipley found moderate limitations in Plaintiff's ability to carry out complex instructions, make judgments on complex work-related questions, interact appropriately with supervisors, and respond appropriately to usual work situations and to changes in a routine work setting.  R. 44, 1123.  Dr. Shipley found Plaintiff was mildly limited in his ability to make judgments on simple work-related decisions, understand and remember complex instructions, and in his ability to interact appropriately with the public and co-workers.  Id.  Lastly, Dr. Shipley assessed no limitation of Plaintiff's ability to understand, remember, and carry out simple instructions.  R. 44, 1123.

Much like Dr. Yang's limitations, the ALJ included Dr. Shipley's proposed limitations in Plaintiff's RFC by limiting him to simple, routine task, and simple work-related decisions.  R. 37.  The ALJ assigned partial weight to Dr. Shipley's opinion pursuant to the regulations because the ALJ found greater social interaction limitations than those Dr. Shipley proposed.  R. 44. Thus, Plaintiff's claim that the ALJ did not evaluate and appropriately weigh Dr. Shipley's opinion pursuant to the regulations fails.  The ALJ adopted Dr. Shipley's limitations and imposed greater limitations, which was well within the ALJ's ability to do.[15]  See Titterington, 174 F. App'x at 11.

---

[15] Additionally, because the ALJ adopted Dr. Shipley's limitations, additional explanation by the ALJ would not affect the outcome of the case.  See Rutherford, 399 F.3d at 553 (holding remand not required if it would not affect the outcome of the case).

Plaintiff's claims that the ALJ failed to properly weigh Dr. Yang and Dr. Shipley's opinions under the regulations and provide adequate reasoning fails.   Further, the ALJ's decision does not warrant remand since the ALJ adopted all the proposed limitations and included greater limitations than proposed by the medical opinions, and further explanation would not change the outcome of the case.

**C. Substantial evidence supports the functional limitations the ALJ adopted and included in Plaintiff's RFC.**

Plaintiff's final claim is that the ALJ's errors failing to properly weigh the medical opinions in accordance with 20 C.F.R. §§ 404.1527 and 416.927 resulted in an RFC that was unsupported by substantial evidence.  Doc. 12, at 1.

An RFC assessment is the most a claimant can do in a work setting despite the limitations caused by his or her impairments.  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  The RFC is based on all the relevant evidence in a case record—medical and nonmedical.  20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(1), (a)(3).  It is the exclusive responsibility of the ALJ to determine the claimant's RFC.  20 C.F.R. §§ 404.1546(c), 416.946(c).  An ALJ is required to include in the RFC any credibly established limitations supported by the record.  Salles v. Comm'r of Soc. Sec., 229 F. App'x 140, 147 (3d Cir. 2007).

Here, the ALJ did not adopt Dr. Tanzer's limitations because, as previously discussed, she found that Dr. Tanzer's opinions were based on Plaintiff's self-reports instead of medical evidence, Dr. Tanzer's medical records were vague and did not support his conclusion, and Dr. Tanzer's opinion was not supported by other record evidence.  R. 43.  Because the ALJ found that Dr. Tanzer's opinions were not supported by the record evidence and the ALJ's

24

determination is supported by substantial evidence, the ALJ is not required to include Dr. Tanzer's proposed functional limitations in Plaintiff's RFC.  See Salles, 229 F. App'x at 147. Additionally, the ALJ evaluated all the relevant medical evidence and adopted most, if not all, of the limitations found by Plaintiff's mental health impairment evaluators, and often times, found greater limitations than those suggested.  R. 43-44, 746, 763-821, 1026-30, 1057, 1119-24, 1172-75, 1182, 1185-93, 1254-71, 1274; see also Rutherford, 399 F.3d at 554; Plummer, 186 F.3d at 429; Titterington, 174 F. App'x at 11.  Thus, the ALJ crafted a restrictive RFC appropriate for Plaintiff's limitations that is supported by substantial evidence.

Accordingly, Plaintiff's claim regarding error in the ALJ's RFC determination lacks merit.

VI.   **CONCLUSION**

The ALJ appropriately applied 20 C.F.R. §§ 404.1527 and 416.927 to Plaintiff's treating physician's opinion and provided adequate reasoning for rejecting the treating physician's opinion.  The ALJ's decision to assign no weight to Plaintiff's treating mental health provider's opinion is supported by substantial evidence.  Lastly, the ALJ evaluated and weighed Dr. Yang and Dr. Shipley's opinions in accordance with 20 C.F.R. §§ 404.1527 and 416.927.

Accordingly, Plaintiff's request for review (Doc. 1) is **DENIED**.  An appropriate order accompanies this opinion.

BY THE COURT:

/s/ Craig M. Straw
CRAIG M. STRAW
U.S. Magistrate Judge